1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

8
9
10
11
12

LEONARD JESSIE MITCHELL,

No. C-06-00387 PJH

Petitioner,

**ORDER DENYING SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

v

JAMES YATES,

Respondent

_____/

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Petitioner, Leonard Jessie Mitchell, a California state prisoner proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons set forth below, the petition for writ of habeas corpus is DENIED.

**BACKGROUND**

On October 11, 2002, petitioner was convicted of assault with a firearm, making criminal threats, being a felon in possession of a firearm, negligently discharging a firearm, misdemeanor battery and misdemeanor brandishing a weapon. He was sentenced to twenty-two years in prison. His conviction arose from an incident on March 25, 2002, during which petitioner went to his neighbor Larry Blanchard's house, beat him with a gun, held him in headlock, shot the gun and threatened to kill him. The California Court of Appeal

1    summarized the facts leading to his conviction as follows: "[petitioner] and his neighbor got

2    into a fight after the neighbor was rude to [petitioner's] step son."  Pet.'s Exh. A, People v.

3    Mitchell, Case No. C042735, California Court of Appeal Opinion at 2.

4         The California Court of Appeal affirmed the judgment.  The Supreme Court of

5    California denied review.

6         On December 9, 2004, petitioner filed a petition for writ of habeas corpus with the

7    Calaveras County Superior Court.  The petition was denied on December 16, 2004.

8         On January 9, 2005, petitioner filed a petition for writ of habeas corpus with the

9    California Court of Appeal.  The petition was denied on January 20, 2005.

10        On January 27, 2005, petitioner filed a petition for writ of habeas corpus with the

11   Supreme Court of California.  The petition was denied on January 4, 2006.

12        On April 6, 2006, petitioner filed a petition for writ of habeas corpus in the United

13   States district court for the Eastern District of California.  He filed an amended petition

14   naming the correct respondent on April 28, 2006.

15        On January 12, 2007, petitioner filed a motion for stay and abeyance.  The motion

16   was denied on June 1, 2007.  On June 7, 2007, however, the court vacated the order

17   denying petitioner's motion.

18        On April 13, 2007, petitioner began a second round of state habeas proceedings by

19   filing a petition for writ of habeas corpus with the Calaveras County Superior Court.  The

20   petition was denied on April 23, 2007.

21        On May 23, 2007, petitioner filed a petition for writ of habeas corpus with the

22   California Court of Appeal.  The petition was denied on June 7, 2007.

23        On June 27, 2007, petitioner filed a petition for writ of habeas corpus with the

24   Supreme Court of California.  The petition was denied on December 12, 2007.

25        On January 18, 2008, petitioner lodged a second amended petition for writ of habeas

26   corpus in federal court.  The petition was filed on May 16, 2008.  On the same day, the court

27   issued an order requiring respondent to file a responsive pleading.

28        Respondent filed an answer on October 10, 2008.  Petitioner filed a traverse on

1  October 20, 2008.  The case was reassigned to the undersigned judge on November 24,

2  2008.

3                                    **LEGAL STANDARD**

4       This court may entertain a petition for a writ of habeas corpus "in behalf of a person in

5  custody pursuant to the judgment of a State court only on the ground that he is in custody in

6  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a);

7  Rose v. Hodges, 423 U.S. 19, 21 (1975).

8       A district court may not grant a petition challenging a state conviction or sentence on

9  the basis of a claim that was reviewed on the merits in state court unless the state court's

10 adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an

11 unreasonable application of, clearly established Federal law, as determined by the Supreme

12 Court of the United States; or (2) resulted in a decision that was based on an unreasonable

13 determination of the facts in light of the evidence presented in the State court proceeding."

14 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412–13 (2000).  If the state court did

15 not reach the merits of a claim, federal review of the claim is de novo.  Nulph v. Cook, 333

16 F.3d 1052, 1057 (9th Cir. 2003).  An application for a writ of habeas corpus may be denied

17 on the merits, notwithstanding the applicant's failure to exhaust remedies in state court.  28

18 U.S.C. § 2254(b)(2).

19      A federal court must presume the correctness of the state court's factual findings.  28

20 U.S.C. § 2254(e)(1).  The state court decision implicated by 2254(d) is the "last reasoned

21 decision" of the state court.  See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991); Barker

22 v. Fleming, 423 F.3d 1085, 1091–92 (9th Cir 2005).  When there is no reasoned opinion

23 from the highest state court to have considered the petitioner's claims, the district court

24 looks to the last reasoned state court opinion.  See Nunnemaker, 501 U.S. at 801–06;

25 Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

26      Habeas relief is warranted only if the constitutional error at issue had a "'substantial

27 and injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson,

28 507 U.S. 619, 638 (1993).

3

**ANALYSIS**

A.

Petitioner alleges that the trial court improperly coerced the jury by suggesting that it had only a few minutes remaining to deliberate at the end of the first day of deliberations. He asserts that the court improperly suggested that failure to reach a verdict that day would result in having to start deliberations "all over again" because an alternate juror would have to be substituted for a juror who was scheduled for surgery. Second Am. Pet. at 5. Petitioner contends that these comments violated his constitutional rights.

At 4:50 p.m. on the first day of deliberations, the court and counsel met with the jury and the following conversation ensued:

> THE COURT: We are back on the record. Mr. Mitchell is present, Mr. Chavez-Ochoa, Ms. Yook, Detective Anenson and our 12 trial jurors, our alternate juror is not present. Who is the foreperson of the jury? Juror 17024[.] It's getting close to five o'clock. And I was thinking of bringing you folks back on Tuesday at nine in the morning. Do you think it would, would you like to try and stay a little more tonight or you want to come back next Tuesday? We can't come back Monday, it's a holiday.
>
> THE JUROR: We have just one issue that we are not unanimous on so would it be possible to talk to you regarding this for maybe some advice or-
>
> THE COURT: Well, if [you have] a particular question you can address it to the Court on the question forms that we have, I would then have to discuss it with the attorneys and we can formulate a response if we can.
>
> JURY FOREPERSON: Right. I don't think it's a matter of that. I think it's well actually it's just we are not agreeing on some things.
>
> THE COURT: Is it your opinion that the jury as to that particular issue is hopelessly deadlocked, do you think any additional amount of time would, or amount of deliberation would change that?
>
> JURY FOREPERSON: I think, I think if you give us a little while longer here we may be able to come to a decision.
>
> THE COURT: Okay. Now five o-clock [sic] they shut down the climate control system and everything else. So there is that.
>
> JURY FOREPERSON: Right we can come back.
>
> THE COURT: We can come back Tuesday at nine o'clock if you want.
>
> JURY FOREPERSON: We have a problem with that.
> THE COURT: Okay.

4

1   JURY FOREPERSON: I believe we have one juror that can't come back on
2   Tuesday. So we have to start over again is that correct? She is having
    surgery.

3   THE COURT: If we had someone [who] couldn't come back I would have to
4   substitute in the alternate juror and you would have to start your deliberation
    over again. Why don't I let you go back to the jury room for a little while.

5   JURY FOREPERSON: Just maybe ten more minutes.

6   THE COURT: Sure.

7   Reporter's Transcript ("RT") 631-633.  Following this exchange, the jury resumed

8   deliberations and returned a guilty verdict approximately fifteen minutes later.

9       In addressing petitioner's claim on appeal, the state court found it waived by virtue of

10  petitioner's failure to object to the court's comments.  Pet.'s Exh. A, Mitchell at 4.  The court

11  also found the claim to lack merit:

12      Here, the trial court's conversation with the jury was not coercive in nature, it
        was advisory.  Late on Friday afternoon, the jury was essentially  given the
13      choice between staying to deliberate further, even though the climate control
        system would be shut down, or returning on Tuesday and restarting
14      deliberations with an alternate juror.  The jury agreed to continue deliberations
        that evening.  Advising the jury the climate control would be shut down was not
15      tantamount to telling them they would have to leave the building.  Nor did
        advising the jury of the effect on deliberations of replacing a juror exert undue
16      pressure on the jury to reach a speedy verdict.  Here, the jury was advised of
        various factors which might affect their decision to continue deliberations that
17      day or to return following the weekend.  The jury believed it needed only about
        10 more minutes of deliberation to reach a verdict on the final point.  Based on
18      all of these factors, the jury itself chose to continue deliberations that evening.
        That the jury returned with its verdict approximately 15 minutes later simply
19      reflects that it was fairly accurate in its estimation of how much additional time
        it needed for deliberation, not that it was improperly coerced.  There is simply
20      nothing in the court's comments which could be construed as an attempt to
        pressure or coerce the jury.
21
    Pet.'s Exh. A, Mitchell at 5-6.
22
        Coercive statements from a judge to the jury may result in the violation of a
23
    defendant's due process rights.  Lowenfield v. Phelps, 484 U.S. 231, 241 (1988).  In order to
24
    determine whether the judge's comments were impermissibly coercive, the court must
25
    evaluate them "in [their] context and under all the circumstances."  Id. at 237.
26
        Here, the judge's comments regarding the climate control and his statement that the
27
    jury would have to begin their deliberations anew if an alternate juror was substituted did not
28

                                            5

1  coerce the jury to reach a particular verdict. The judge's comments did not even encourage

2  the jury to continue deliberating to reach a verdict. The judge merely advised the jury of

3  various factors they might wish to consider in deciding whether to continue deliberations that

4  day or to return another day. Under these circumstances, the state court's decision was not

5  contrary to, or an unreasonable application of clearly established Supreme Court

6  precedent. Accordingly, this claim is denied.

7                                                    B.

8          Petitioner alleges numerous instances of ineffective assistance of counsel at trial.

9  Respondent argues the contrary. Petitioner presented this claim to the Supreme Court of

10  California in a habeas petition, which was summarily denied on January 4, 2006.

11          To prevail on a habeas claim of ineffective assistance of counsel, Petitioner must

12  establish both (1) that counsel's performance was so deficient that it fell below an "objective

13  standard of reasonableness" and (2) that the deficient performance was prejudicial,

14  rendering the results of his trial unreliable or fundamentally unfair. See Raley v. Ylst, 470

15  F.3d 792, 799 (9th Cir. 2006) (quoting Strickland v. Washington, 466 U.S. 668, 688, 692

16  (1984)). To establish prejudice, Petitioner "must show that there is a reasonable probability

17  that, but for counsel's unprofessional errors, the result of the proceeding would have been

18  different. A reasonable probability is a probability sufficient to undermine confidence in the

19  outcome." Strickland, 466 U.S. at 694.

20          a. Subclaim 1: Petitioner alleges that on October 8, 2002, trial counsel

21  misrepresented a plea bargain offer to him.

22          Petitioner fails to identify, and the record does not reveal, counsel's acts or omissions

23  resulting in ineffective assistance. See Strickland, 466 U.S. at 90. On October 8, 2002, the

24  trial court spelled out the district attorney's offer. RT 111-113. The offer was for a sentence

25  of 12 years, whereas petitioner faced a maximum of 24 years if he went to trial. Petitioner

26  discussed the offer with his attorney. RT 113-114. Following the discussion, trial counsel

27  stated:

28

6

1            Your Honor, I have had an opportunity to discuss it with my client and I have
2  explained to him his defenses and what I believe his chances are of the jury
          convicting him and explained to him if, in fact, he does proceed to trial and is
3            convicted, based upon his prior record, he would, in fact, probably be looking
          at all 24 years.  With that in mind, he has decided to proceed to trial.

4  RT 114.  The record does not give any indication that trial counsel misrepresented the

5  district attorney's plea bargain offer.  Accordingly, this subclaim is denied.

6            b.  Subclaim 2:  Petitioner alleges that photos of the victim were introduced without

7  foundation and without an "acceptable forensic basis."  Second Am. Pet. at 5(b).  Counsel

8  did not object to the introduction of these photos.  Petitioner raised an analogous claim in his

9  petition for a writ of habeas corpus filed with the Supreme Court of California on January 27,

10  2005, in which he argued:

11            During the testimony of [victim] Larry Blanchard (RT 245), photos were
          introduced by Mr. Blanchard while on the stand.  These photos were not taken
12            by any member of law enforcement nor any member of the [p]rosecution or
          [d]efense teams.  In fact, these photos had not been seen before this time by
13            the defense.  The exact date of exposure of these photos is unknown.  The
          photos depict bruises on Mr. Blanchard which are pronounced when compared
14            to the photos taken by police and the testimony of police.  Defense counsel
          made no objection to this late discovery and the photos were admitted as
15            evidence.

16  Resp.'s lodged doc. no. 11 at 8.

17            Petitioner fails to show that an objection to the photos was warranted.  Blanchard

18  testified that his niece took the pictures, labeled as exhibits 7A and 7B at trial, and that they

19  accurately depicted how he appeared on the date the photos were taken.  RT 245.

20  Ultimately, the trial court admitted only exhibit 7A, finding that exhibit 7B was speculative

21  since Blanchard did not know when the bruising depicted in the photo occurred.  RT 433-34.

22  Under these circumstances, the prosecution properly authenticated and laid a foundation for

23  the admission of exhibit 7A.  See Cal. Evid. Code § 1400.  Petitioner has not shown that an

24  objection by trial counsel would have been sustained.  He thus fails to establish that trial

25  counsel was ineffective for failing to object to the photos.  See James v. Borg, 24 F.3d 20,

26  27 (9th Cir. 1994) (failure to make futile objection does not establish ineffective assistance.)

27

28

7

**United States District Court**
For the Eastern District of California

1　　　　The state court's decision rejecting this claim was not contrary to, or an unreasonable

2　application of clearly established Supreme Court precedent.  Accordingly, this subclaim is

3　denied.

4　　　　c.  Subclaim 3:  Petitioner alleges that the introduction of a shell casing found four

5　months after the initial police investigation of the crime scene lacked "acceptable forensic

6　foundation."  Second Am. Pet. at 5(b).  Trial counsel did not object to the introduction of this

7　evidence.  Petitioner raised an analogous claim in his petition for a writ of habeas corpus

8　filed with the Supreme Court of California on January 27, 2005, in which he argued:

9　　　　　During the examination of Larry Blanchard (RT 250) a shell casing was
　　　　　introduced.  The casing was found approximately four months after the alleged
10　　　　incident at the Blanchard residence.  This means that the police investigators
　　　　　missed the casing on the 25th of March during their initial investigation and no
11　　　　one had cleaned the house for four months.  Given the lack of a clear chain of
　　　　　custody and the highly suspect date of discovery an objection should have
12　　　　been made by defense counsel regarding this shell casing.

13　Resp.'s lodged doc. no. 11 at 8-9.

14　　　　Contrary to petitioner's assertions, the record reveals that trial counsel did, in fact,

15　object to the admission of the shell casings.  RT 250 ("Your Honor, no way he can specify

16　that is the shell casing that was found in that particular location.")  The objection was

17　overruled.  The court stated that the issue would be a proper subject for cross-examination.

18　Id.  Defense counsel did in fact cross-examine Blanchard regarding the shell casing.  RT

19　298-302.  Because petitioner fails to show that counsel made an error, much less one that

20　fell below an objective standard of reasonableness, his ineffective assistance subclaim must

21　be denied.

22　　　　d.  Subclaim 4:  Citing RT 255, petitioner alleges that the victim's testimony that he

23　had access to the shell casings was "belatedly introduced without foundation."  Second Am.

24　Pet. at 5(b).  At RT 255, Blanchard testified that he kept shells at his house at the time that

25　he was attacked by petitioner.

26　　　　Petitioner's allegation is vague and conclusory.  Blanchard's testimony was elicited

27　on cross-examination in a timely manner and with an appropriate foundation.  Petitioner fails

28　to establish ineffective assistance.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995)

United States District Court

For the Eastern District of California

1 (conclusory allegations are insufficient to establish ineffective assistance of counsel.)

2 Accordingly, this subclaim is denied.

3      e. Subclaim 5: Petitioner argues that trial counsel was ineffective for failing to object

4 on the ground that the trial testimony of the victim did not match his prior testimony at a

5 preliminary hearing.

6      Petitioner fails to demonstrate that an objection was warranted under these

7 circumstances. Typically, when faced with a witness who has made prior inconsistent

8 statements, trial counsel does not object, but impeaches the witness with the prior

9 statement. See Cal. Evid. Code §§ 770, 780, 1235. Counsel's failure to make a futile

10 objection does not establish ineffective assistance. James, 24 F.3d at 27. Accordingly, this

11 subclaim is denied.

12      f. Subclaim 6: Petitioner alleges that counsel was ineffective for failing to prevent the

13 introduction of a back-dated police report and bullet into evidence.

14      Petitioner's allegations lack merit. Trial counsel did in fact move in limine, as well as

15 during trial, to exclude the bullet from evidence. Clerk's Transcript ("CT") 103-04; RT 434-

16 437. His motions were denied. CT 110; RT 436. Trial counsel also questioned detective

17 Keith Anenson regarding the back-dated police report. RT 404-407. Anenson explained

18 that the report accurately reflected that he went to victim Blanchard's home on July 16, 2002

19 to recover additional evidence. A typed version of his notes however, was incorrectly dated

20 June 4, 2002. Id. In light of this, counsel was not ineffective for failing to file a motion to

21 exclude the police report.

22      Petitioner has failed to establish that counsel was ineffective. Accordingly, this

23 subclaim is denied.

24      g. Subclaim 7: Petitioner alleges that trial counsel failed to investigate the relevance

25 of a witness. Petitioner raised an analogous claim in his petition for a writ of habeas corpus

26 filed with the Supreme Court of California on January 27, 2005, in which he argued:

27      Petitioner's counsel put the Petitioner's sister [Keeney] on the stand. During
         cross-examination, (RT 481) it became clear that the witness was no where

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> [sic] near the incident.  By placing a [sic] irrelevant witness on the stand, counsel undermined the credibility of the witness, the Petitioner and his own.

Resp.'s lodged doc. no. 11 at 10.

Petitioner fails to show that Keeney's cross-examination was not part of counsel's trial strategy.  See Strickland, 466 U.S. at 689.  Keeney testified for the defense, stating that about a year before petitioner's altercation with his neighbor, she accidentally discharged a bullet that caused a hole in neighbor Blanchard's house.  RT 465-468.  Defense counsel used this evidence in closing argument to provide an alternative explanation for the bullet holes in Blanchard's house.  RT 580-586.  Petitioner fails to demonstrate that putting Keeney on the stand was not a sound trial tactic.  Accordingly, his subclaim lacks merit and is denied.

h.  Subclaim 8:  Petitioner alleges that trial counsel failed to corroborate his testimony that he had a pellet gun rather than a gun.  Petitioner raised an analogous claim in his petition for a writ of habeas corpus filed with the Supreme Court of California on January 27, 2005, in which he argued:

> During the direct examination of the Petitioner (RT 499), it was brought out that he was only shooting a pellet gun.  The witnesses to this fact, the boys, were not asked to appear and testify to this fact.  At the very least, this would have verified the truth of part of the Petitioner's testimony and thus increased his credibility.

Resp.'s lodged doc. no. 11 at 10.

Petitioner fails to establish a reasonable probability that the corroborating testimony would have changed the outcome of trial.  Strickland, 466 U.S. at 694.  Petitioner's subclaim lacks merit and is denied.

i.  Subclaim 9:  Petitioner alleges that while arguing against a particular jury instruction, trial counsel failed to suggest an alternative defense instruction.

Petitioner has not alleged which particular instruction trial counsel should have requested and how such an instruction would have impacted the outcome of trial.  Without such a showing, petitioner fails to establish ineffective assistance.  See Jones, 66 F.3d at

10

204 (conclusory allegations are insufficient to establish ineffective assistance of counsel).

Petitioner's claim is denied.

j. Subclaim 10: Petitioner alleges that trial counsel should have objected to any mention of a gun by the prosecutor. Petitioner raised an analogous claim in his petition for a writ of habeas corpus filed with the Supreme Court of California on January 27, 2005, in which he argued:

> While counsel cannot object to any argument presented by the state during closing, trial counsel should have contested the validity of the gun element of the Prosecutor's statements. The gun in question was never produced nor was any handgun ever linked to the Petitioner or the incident itself.

Resp.'s lodged doc. no. 11 at 11.

Petitioner fails to demonstrate that mention of the gun was improper under the circumstances, or that an objection to the mention of the gun would have been successful. Petitioner thus fails to establish ineffective assistance. See James, 24 F.3d at 27. His subclaim is denied.

k. Subclaim 11: Petitioner argues that trial counsel failed to address the prosecutor's improper imputation of a consciousness of guilt to petitioner. Even if trial counsel had argued against the inference of a consciousness of guilt, petitioner fails to demonstrate a reasonable probability that such argument would have changed the outcome of trial. Strickland, 466 U.S. at 694. Petitioner fails to establish ineffective assistance. His subclaim is denied.

C.

Petitioner alleges that he was denied effective assistance of appellate counsel. He asserts that counsel failed to properly research issues for appeal and did not inform petitioner of his need to pursue review of his case with a higher court once the appellate court upheld his conviction. He claims that as a result, his appeal process was delayed.

The proper standard for evaluating a claim that appellate counsel was ineffective is that enunciated in Strickland. Smith v. Robbins, 528 U.S. 259, 285 (2000). Under the Fourteenth Amendment, a criminal defendant has the right to the assistance of counsel only

11

United States District Court
For the Eastern District of California

1  on a first appeal as of right.  Douglas v. California, 372 U.S. 353, 355 (1963).  A criminal

2  defendant does not have a constitutional right to counsel to pursue discretionary state

3  appeals.  Wainwright v. Torna, 455 U.S. 586, 587 (1974).  Accordingly, a defendant could

4  not be deprived of the effective assistance of counsel when pursuing a discretionary appeal.

5  Id.

6       Here, counsel could not have been ineffective for failing to file a petition for review

7  with the Supreme Court of California, as such review is discretionary.  Moreover, petitioner's

8  appellate counsel did file a timely petition for review, which was denied on April 28, 2004.

9  Resp.'s lodged docs. nos. 5 & 6.

10       Furthermore, petitioner's allegations that appellate counsel did not properly research

11  appeal issues lack specificity.  Petitioner fails to identify the issues that allegedly were not

12  researched.  Conclusory allegations are insufficient to establish ineffective assistance of

13  counsel.  Jones, 66 F.3d at 204.

14       For the above-mentioned reasons, petitioner's claim lacks merit and is denied.

15  D.

16       Petitioner alleges that trial counsel provided ineffective assistance by failing to call as

17  a witness Ron Holberg (spelled Hoiberg in trial transcripts), who was prepared to testify that

18  petitioner was not armed with a gun at the time of his altercation with his neighbor

19  Blanchard.  He asserts that Holberg provided a statement to this effect, that the statement

20  was turned over to trial counsel, but counsel told Holberg that he would not need to testify.

21       The record does not support petitioner's claim.  Not only does petitioner fail to provide

22  any evidence of the existence of Holberg's alleged statement, but his own trial testimony

23  supports a different set of events on the day of the altercation.  Petitioner testified that Ron's

24  brother, Robert Holberg, was shooting a pellet gun in petitioner's driveway on the day of the

25  incident, *after* the incident with Blanchard.  RT 497-499, 527-528.  At no time did petitioner

26  testify that Ron Holberg was at his residence on the day of the altercation.

27       Petitioner has failed to demonstrate that counsel's failure to call Ron Holberg as a

28  witness, whose alleged statement and potential testimony are unsupported by the record,

12

1  was an unreasonable tactical decision under the circumstances.  See Sanders v. Ratelle, 21

2  F.3d 1446, 1456 (9th Cir. 1994).  Accordingly, this claim is denied.

3                                          F.

4          In claims 5-9, petitioner sets forth various claims concerning California's Determinate

5  Sentencing Law.  Respondent alleges that petitioner is precluded from raising these claims

6  by the statute of limitations set forth in the AEDPA.  Respondent is correct.

7          The AEDPA imposes a one-year limitations period for the filing of a federal habeas

8  petition.  28 U.S.C. § 2244(d)(1).  The statute provides, in pertinent part, that the limitations

9  period runs from the latest of the date on which the judgment became final by the conclusion

10 of direct review or the expiration of the time for seeking such review.  28 U.S.C. §

11 2244(d)(1)(A).  "Direct review" includes the period within which a petitioner can file a petition

12 for a writ of certiorari from the United States Supreme Court, whether or not the petitioner

13 actually files such a petition.  Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999).

14 Accordingly, if a petitioner fails to seek a writ of certiorari from the United States Supreme

15 Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day

16 period defined by Supreme Court Rule 13 expires.  See Miranda v. Castro,292 F.3d 1063,

17 1065 (9th Cir. 2002) (where petitioner did not file petition for certiorari, his conviction

18 became final 90 days after the California Supreme Court denied review).  The time during

19 which a properly filed application for state post-conviction or other collateral review is

20 pending shall not be counted toward the limitation period.  28 U.S.C. § 2244(d)(1)(2).

21         Petitioner's direct appeal was denied on February 10, 2004.  His petition for review

22 with the Supreme Court of California was denied on April 28, 2004.  The state judgment

23 became final ninety days later on July 27, 2004.  The statute of limitations thus expired one

24 year, i.e. July 27, 2005 - plus any tolled time - later.

25

26

27

28

13

1    During the limitations period, petitioner filed three state habeas petitions. The first

2  petition was filed on Dec. 9, 2004, and denied on Dec. 16, 2004.[1] This petition tolled the

3  limitations period for 8 days. The second petition was filed on Jan. 9, 2005, and denied on

4  January 20, 2005. This petition tolled the limitations period for 12 days. The third petition

5  was filed on January 27, 2005, and was denied on January 4, 2006.

6    By January 27, 2005, 184 days had elapsed since petitioner's statute of limitations

7  started running on July 27, 2004. Since the limitations period was tolled for 20 days of this

8  period, 164 days of the limitations period had elapsed by January 27, and petitioner

9  therefore had 201 days remaining during which he could file a timely federal habeas petition.

10 His third habeas petition, filed on January 27, 2005, tolled the limitations period until January

11 4, 2006, when the petition was denied. Petitioner therefore had 201 days from January 4,

12 2006, or until July 24, 2006, to file his petition.

13    Petitioner timely filed his federal habeas petition containing claims 1-4 on April 6,

14 2006. He filed an amended petition naming the correct respondent on April 28, 2006.[2]

15    Petitioner lodged his second amended habeas petition, which includes claims 5-9, on

16 January 18, 2008. The petition was filed on May 16, 2008, long after the expiration of the

17 statute of limitations on July 24, 2006. Claims 5-9 of the second amended petition are

18 therefore time-barred unless they relate back to claims 1-4 of the amended petition.

19    When claims in an amendment are barred by the statute of limitations, Fed. Rule Civ.

20 Proc. 15(c)(2) provides for the relation back of claims to the original pleading if the claims

21 asserted in the amended pleading arise out of the conduct, transaction or occurrence set

22 forth in the original pleading. In Mayle v. Felix, 125 S. Ct. 2562, 2574 (2005), the United

23

24    [1] A pro se prisoner's habeas petition is filed when he delivers the papers to prison
   authorities for mailing. Miles v. Prunty, 187 F.3d 1104, 1107 fn. 2 (9th Cir. 1999); Rule 3(d)
25 of the Rules Governing Section 2254 Cases in the United States District Courts.

26    [2] On January 12, 2007, well after the expiration of the statute of limitations, petitioner
   filed a motion for stay and abeyance, presumably to stay federal proceedings while he
27 exhausts claims 5-9 in state court. The motion was denied on June 1, 2007. On June 7
   however, the court vacated the order denying the motion. Since petitioner's request for a stay
28 was not timely and a stay was never entered, these proceedings do not affect the timeliness
   of his second amended petition.

14

1   States Supreme Court held that "so long as the original and amended petitions state claims

2   that are tied to a common core of operative facts, relation back will be in order."  An

3   amended habeas petition will not relate back, and hence escape the AEDPA's one-year

4   time limit, however, if it asserts new grounds for relief supported by facts that differ in both

5   time and type from those set forth in the original pleading. Id. at 2566.

6        Here, claims 5-9 do not relate back to claims 1-4 of the petition because they are not

7   tied to a common core of operative facts.  In claims 5-9, petitioner alleges that California's

8   Determinate Sentencing Law ("DSL") violates his right to trial by a jury in that it authorized

9   the judge to impose an aggravated term, allowed the judge to find aggravating facts in

10  sentencing and employ the wrong burden of proof.  He also alleges that the DSL violates

11  due process.  These claims differ in time and type from the assertions in claims 1-4, which

12  raise allegations of ineffective assistance and coercion of the jury verdict.  Petitioner's

13  claims 5-9 fail to meet the requirements for relation-back and are barred by the statute of

14  limitations.  Accordingly, they are denied.

### CONCLUSION

16       For the reasons set forth above, the petitioner's second amended petition for writ of

17  habeas corpus is DENIED.  The clerk shall enter judgment in favor of respondent and close

18  the file.

19  **IT IS SO ORDERED.**

20  Dated: February 8, 2010

22  _____
    PHYLLIS J. HAMILTON
23  United States District Judge

15